UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | CRIMINAL NO. 17-MJ-287 (GMH) |
| CLARK CALLOWAY, JR. | : | |
| | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of defendant Clark Calloway, Jr. In support of this motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this matter.

## BACKGROUND AND STATEMENT OF FACTS

As part of this memorandum, the government incorporates the affidavit of Agent Adam Pool, dated and sworn to on May 5, 2017 (Affidavit). The Affidavit explains 1) the defendant's public posts on Facebook from May 2013 to May 2017, including statements: in support of the Islamic State of Iraq and al-Sham (ISIS); against white people, police officers and non-Muslims; and advocating the murder and death of others using edged weapons and an AK-47; 2) his interactions with an FBI Confidential Human Source (CHS1); 3) the defendant's interactions with CHS2, including his desire to purchase a firearm from CHS2 prior to CHS2 becoming a CHS; 4) his interactions with CHS3, including his communications to use and purchase an AK-47 firearm; 5) the defendant's ultimate purchase and possession of a fully automatic AK-47 assault rifle; 6) the defendant's statements to law enforcement that he possessed the firearm on

his own initiative and not in response to any immediate threat of violence; and 7) the recovery of the fully automatic AK-47 from the defendant's possession and a machete from his apartment. At the preliminary hearing, the facts stated in the Affidavit will be offered as a proffer after a grand jury indictment, which was issued on May 9, 2017.

The defendant's criminal history supports his detention.  On or about April 16, 2002, the defendant stabbed a male prostitute several times and was arrested and charged with Assault with Intent to Kill While Armed in 2002FEL002412 (D.C. Superior Court 2002).  The victim suffered wounds to his middle chest, lower back, buttocks, thighs, and arms.[1]  The defendant admitted that he always carried a knife when seeking gratification from a prostitute just in case there came a need to protect himself, and that he stabbed the victim after he thought the victim "kind of jumped at me."  When stopped by police as he was driving away from the area the defendant initially told police that he was a victim, and that someone just tried to rob him.  Later, the defendant claimed that he stabbed the victim after he was surprised to learn that that the prostitute he had picked up was male and not female.  The defendant pled guilty to one count of aggravated assault and one count of carrying a dangerous weapon.[2]

On March 9, 2006, the defendant was charged with sexual solicitation, while on supervised release in 2002FEL002412, and his original term of supervised release was revoked.

---

[1] The victim initially reported that the defendant had picked him up and tried to rob him at gunpoint, and that the defendant tried to force the victim to have sex with the defendant. The victim indicated that he resisted and the defendant stabbed him multiple times.

[2] The charge of carrying a dangerous weapon (CDW) can carry either a one-year or five-year maximum penalty. See 22 D.C. Code §4504(a) (2002). The five-year maximum applies when the deadly or dangerous weapon is carried "in a place other than the person's dwelling place, place of business, or on other land possessed by the person." Id. at §4504(a)(1). Even though it appears the five-year maximum penalty would have been applicable, it appears the defendant plead guilty to the one-year maximum CDW offense.

On September 11, 2011, the defendant choked his now ex-wife, and was charged with assault, 2012DVM568 (D.C. Superior Court 2012). On April 2, 2012, the defendant entered into a deferred sentencing agreement (DSA), in which he agreed to avoid any rearrest, complete community service, stay away from the victim, perform drug testing and treatment as needed, and complete a domestic violence intervention program. The defendant did not successfully complete his DSA, and he was arrested for violations including a civil protection order (CPO) violation, and charged with violating the stay-away order from his now ex-wife, possession of a knife, and contempt of court. In the description of the defendant's noncompliance in August 2012, the Court Services and Offender Supervision Agency indicated that the defendant had failed to complete any of his community service hours, had completed only five of twenty-two sessions of the domestic violence intervention program in four months, and had tested positive for marijuana. The writer stated, "Mr. Calloway's adjustment at this time is noted as poor." On August 29, 2012, his deferred sentencing agreement was revoked, and on September 5, 2012, he was sentenced and convicted.

## **APPLICABLE LAW**

The Government has requested a pretrial detention hearing under a provision of the Bail Reform Act, 18 U.S.C. § 3142(f)(1), which provides that a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community" upon motion for a case that involves (E) any felony . . . that involves the possession or use of a firearm." 18 U.S.C. § 3142(f)(1)(E). The government also requested the defendant remain detained pursuant to 18 U.S.C. § 3142(f)(1)(A), because the

offense of Transportation of a Firearm With the Intent to Commit a Felony where the felony to be committed is an assault with a dangerous weapon, and the maximum term of imprisonment of 10 years or more is prescribed, and 18 U.S.C. § 3142(f)(1)(D), because the defendant has been convicted of two or more offenses (aggravated assault in 2002, and simple assault in 2012) that are crimes of violence.  See 18 U.S.C. § 3156(a)(4)(A) (defining a crime of violence as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another").

In making a pretrial detention decision, by statute the Court must consider four factors: 1) the nature and circumstances of the offense charged, including whether the offense involves such things as a firearm; 2) the weight of the evidence against the person; 3) the history and characteristics of the person; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g). The Government may proceed by way of proffer, see United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996), and will do so in this case.

Here, the first factor -- the nature and circumstances of the offense charged -- weighs strongly in favor of detention.  As attested in the Affidavit, and by a grand jury finding probable cause, the defendant, who is a felon, was in possession of a fully automatic AK-47 machinegun, and the defendant caused the transportation of the machinegun across state lines with the intent to commit a felony, that is, an assault with a dangerous weapon against innocent persons in our community.  As detailed in the Complaint, the defendant expressed support for ISIS, Affidavit ¶ 15, and expressed animus against numerous groups, including African-Americans, white people, law enforcement, and non-Muslims, see, e.g. ¶¶ 16, 19, 28, 29, 31, 38, 48, 51, 54, 55.  While

publicly posting his extremist views and calling for violence against others, the defendant actively sought to obtain an AK-47 firearm from at least two different sources. He did so, according to his post-arrest statement, of his own volition, see Criminal Jury Instructions for the District of Columbia (Redbook), Instruction 9.310 Entrapment ("[A] person is not entrapped when s/he is ready and willing to violate the law and law enforcement officials [or their agents] merely afforded an opportunity for him/her to do so"), after numerous postings of violent and extreme messages and expressing a desire to obtain an AK-47 from CHS2. Although, in his post-arrest interview, the defendant described his goal of obtaining an AK-47 for "protection," when pressed he could not indicate any specific person from whom he seeking protection, or that he had any immediate fear of harm; instead the defendant claimed to need the weapon to defend himself from a coming "race war" and that he wanted the weapon for a "rainy day." See Redbook, Instruction 9.500 ("Every person has the right to use a reasonable amount of force in self-defense if (1) s/he actually believes s/he is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief").

      The defendant's stated intent demonstrates that he was an immediate and extraordinary threat to the community, and had the defendant obtained other weapons from a source unknown to the government, the danger to the community would have been extreme. The nature of this offense, and the defendant's violent stated intent, weighs heavily in favor of detention. Furthermore, the seriousness of the offenses also poses a significant risk of substantial incarceration for the defendant; if convicted at trial on all charges, the Defendant faces up to 30 years of incarceration (10 years on each count). The defendant also has a significant criminal history score and estimated sentencing guideline range. That exposure, in turn, only increases

the incentive of the defendant to flee the jurisdiction.

The second factor, that is, the weight of the evidence, also weighs in favor of detention. The defendant was arrested in possession of the fully automatic AK-47; his efforts to obtain the firearm were recorded in contemporaneous text-messages; and he publicly posted his violent plans to commit violent offense with the AK-47 on Facebook before obtaining the firearm. While the defense may claim the defendant planned to use the AK-47 only on a "rainy day" for an upcoming race war based on his post-arrest statements to the FBI, the defendant's contemporaneous postings between March 31, 2017, and May 3, 2017, of specific violence demonstrates that his true intent was to use the firearm to commit an assault.[3] See ¶¶ 54c ("When this race war kicks off, we ain't just slaughtering the Neaderthal. We are executing coons too. I call it "coon" hunting with an AK-47!), 54e ("Weapon of choice: Machete, AK-47, hands, penis"); 55f (Ak in route! Machete on deck! I'm slaughtering anybody that ain't Muslim in these last days), 55j (displaying AK-47s), 55w (on April 30, 2017, "AK-47! Remember this post"). To the extent the Court considers the veracity of defendant's post-arrest statements in determining possible release, it is important to point out that the defendant is a convicted felon, who violated the terms of his supervised release, and violated a Court-ordered stay-away in the domestic violence case where he previously choked his now ex-wife.

The third factor, that is the history and characteristics of the person, also weighs in favor of detention. In addition to the content of his posts, the defendant has been previously arrested for Assault with Intent to Kill While Armed, he has two separate convictions that constitute

---

[3] Concerning paragraph 54c, the defendant in his post-arrest statement indicated "Neaderthal" refers to white peoples, and "coons" refers to African-American people who show disloyalty to their race.

crimes of violence,[4] and he appears to have twice had his status revoked due to noncompliance – in one instance losing the benefit of a DSA and incurring another assault conviction.

The fourth factor, that is the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. As discussed above, the defendant's intent to commit a mass-casualty attack poses a substantial danger to the community. The defendant has demonstrated a desire to hurt others through his words, deeds, and his own specific criminal history. He also intended to obtain the tools necessary to commit such an act, here with an AK-47 and a machete, even knowing that his mere possession of a firearm would constitute a federal felony. The defendant's stated support of ISIS also is a significant factor favoring detention: the defendant has demonstrated that he enjoys the violence of ISIS, including beheadings of innocent persons, and he has stated a desire to travel to ISIS territory in the past.

---

[4] The government uses the term "crime of violence" as that term is used and defined by 18 U.S.C. §§ 3142(f)(1)(D) and 3156(d).

Given all of these facts and circumstances, the government has shown by clear and convincing evidence that there is no condition, or combination of conditions, that will reasonably assure the safety of the community, or reasonably assure the defendant's appearance in Court. WHEREFORE, the Government requests that the Court order the defendant to be detained without bond pending resolution of this case.

                Respectfully submitted,

                CHANNING D. PHILLIPS
                United States Attorney
                D.C. Bar No. 415793

By:            /s/
                Jeff Pearlman
                D.C. Bar No. 466-901
                Tejpal S. Chawla
                D.C. Bar. No. 464-012
                Assistant United States Attorneys
                555 4th Street, N.W.
                Washington, D.C. 20530
                202-252-7228 (Pearlman)
                202-252-7280 (Chawla)
                Jeffrey.pearlman@usdoj.gov
                Tejpal.Chawla@usdoj.gov