UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 17-CR-089 (RJL) |
| v. | : | |
| | : | |
| CLARK CALLOWAY, JR., | : | Sentencing Date: June 16, 2021 |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S FIFTH SUPPLEMENTAL SENTENCING MEMORANDUM

The government files this memorandum to outline the sentencing issues before the Court. The government will not restate all the prior argument made in the pleadings and seeks solely to focus on the key issues.

**A. Background**

The parties do not have significant dispute over most of the facts of this case.[1] The defendant is a convicted felon[2] who is an ISIS supporter, who hates non-Muslims (who he refers to as "*kuffar,*"[3] "Babylonians" and "pork-eaters"), white people (who he refers to as "crackers," "devils," and "non-melaninated") and the police (who he refers to as "pigs" and "swine"). Leading up to the defendant's arrest, he made dozens of public, on-line comments about how he was going to obtain weapons to kill and murder those categories of people because of his ideology. See ECF

---

[1] Judge Sullivan ordered the government to identify all facts it was relying on for an upward departure, see Government's Third Supplemental Memorandum in Support of Sentencing [ECF 51], and the defense to identify that evidence which it was contesting, see Defendant's Response to the Government's Submission [ECF 52]. In ECF 52, the defendant agreed with the facts submitted by the government but disputed the accuracy of statements by any incarcerated individuals, the only person being W7.

[2] The defendant has a prior domestic violence conviction, 2012DVM0568, which also makes him ineligible to possess a firearm under 18 U.S.C. § 922(g)(9).

[3] *Kuffar* or *kufar* is a derogatory Arabic word used to refer to non-Muslims.

51 at ¶¶ 1a-f, 19, 22 (a-w), 23(a-ii). In early 2017, the defendant agreed to purchase a fully automatic AK-47 rifle from a person who was an FBI confidential human source (CHS3). <u>Id.</u> at ¶¶ 14-18, and 21. The defendant believed that CHS3 was a like-minded Muslim who also supported ISIS. The defendant told CHS3 that he supported ISIS, that he wanted the firearm to start a race war and to kill police officers. As the date grew closer for the defendant to receive the weapon, he posted more and more inflammatory rhetoric that indicated he would use the AK-47 (and a machete that was already in his possession) to kill his ideological enemies. <u>Id.</u> ¶¶ 1a-f, 19, 22a-w, 23a-ii. He also discussed with CHS3 his desire to attack MPD officers at a police station using his military skills. <u>Id.</u> at ¶¶ 18 and 21. Prior to paying CHS3 to obtain the fully automatic AK-47, the defendant unsuccessfully attempted to obtain firearms from other sources (a civilian, W-4, and a civilian who later became FBI source, W2/CHS2), which the defense does not dispute. <u>See</u> <u>id.</u> at ¶¶ 3-6 and 24, and ECF 52-2 at ¶ 3 and 5 (does not dispute substance of conversation with W4). On May 4, 2017, CHS3 delivered to the defendant at his home in the District of Columbia, a fully automatic AK-47 with 90 rounds of ammunition. When the defendant took receipt of the weapon, he told CHS3 "you took a lot of risk taking this up and down [for me]." The defendant was immediately arrested, and after waiving his <u>Miranda</u> rights, he confessed to obtaining the AK-47 despite being a felon, and he admitted that he talked to others about attacking police stations.[4]

---

[4] The government is aware that the defense will claim that the defendant's statements regarding his motive to use the AK-47 automatic rifle were mere puffery, as this same claim was made at his detention hearing on May 10, 2017. The Court has already reviewed substantially the same evidence and rejected it:
> The facts specific to the Defendant's case give the Court even greater cause for concern that is typical with such an offense. Indeed, Defendant was not arrested in possession of a handgun, but a fully-automatic AK-47 machine gun. He made repeated statements online and in person that he intended to use that machine guns to commit acts of violence against other individuals, including murder. Moreover, these repeated statements evidence an

On October 18, 2018, after failing in his effort to dismiss the Indictment against him, the defendant pled guilty to all three counts of the Indictment in this case: each count carries a maximum penalty of ten years' incarceration, for a maximum 30 year sentence.[5]  The defendant pled guilty without a plea agreement or any promises from the government, and retains his full right to appeal his motion to dismiss and any sentence imposed by the Court.  Both the defense and government are free to argue for any applicable enhancements or departures under the U.S. Sentencing Guidelines and any sentence less than the statutory maximum (30 years).  The government believes that several upward departures are applicable under the U.S. Sentencing Guidelines (U.S.S.G.), and the defendant should be sentenced to a minimum of 120 months incarceration (10 years).

Approximately 11 months after the defendant was arrested, the government learned of a witness ("W7"),[6] who met the defendant while incarcerated in 2018.  W7 testified twice before the Court (February 21, 2020 and May 27, 2021) and each time W7 confirmed the defendant still harbored strong animus and desire to support ISIS, obtain more (illegal) machine guns, and upon his release, use his military background to ambush and kill: people who got him arrested, white people, non-Muslims, the police, and enemies of ISIS.  The defendant also told W7 he wanted to

---

    intent on Defendant's part to use that machine gun to target specific groups of people – non-Muslims and white Americans – towards whom he had extreme animus.  Given the steps the Defendant took to purchase the AK-47 and the statements he posted online during that process, the Court cannot conclude that Defendant's comments were idle threats.  Rather, they appear to be part of a plan by Defendant thwarted by law enforcement to harm those with whom he disagrees.

See Detention Memorandum (Magistrate Judge M. Harvey), ECF 7 at pp. 10-11.

[5] The defendant pled guilty to Count 1, Interstate Transportation of a Firearm and Ammunition in violation of 18 U.S.C. §§ 924(b) and 2, and 22 D.C. Code §401; Count 2, Unlawful Possession of a Firearm and Ammunition (Felon) in violation of 18 U.S.C. §§ 922(g)(1) and (9); and Count 3, Illegal Possession of a Machine Gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

[6] The government is not identifying the name of the W7 to minimize security concerns for the witness.

attack a different MPD police station from the one that the government believed he had been targeting. The government submits that W7's testimony at both hearings was credible, and there were no material discrepancies in his testimony. W7's testimony is also entirely consistent with the other evidence in this case and confirms: (1) being arrested did not diminish the defendant's animus; (2) the defendant was not merely a keyboard warrior who spews hatred only on social media; and (3) the defendant intends to commit violence upon his release, and he therefore remains a serious danger to the community.

The defense has presented no evidence to rebut the government's evidence in this case, or the testimony of W7.

### B. Sentencing Guidelines and U.S.S.G. §2K2.1(b)(6)(B)

U.S.S.G. §2K2.1(a)(3) applies to all three charges of conviction (level 22), and the parties agree that the defendant's criminal history calculation places him in at least Level III. The parties do, however, dispute whether the four level upward enhancement of §2K2.1(b)(6)(B) should apply where the defendant possessed the firearm or ammunition "with the knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The government believes the application is virtually automatic in cases where, as here, a defendant pleads guilty under 18 U.S.C. §924(b) because the elements of the office require the defendant to intend to commit a felony with the firearm. See Government's Supplemental Memorandum in Aid of Sentencing, ECF 44 at 1-3 (citing cases), and U.S.S.G. §2K2.1, Application Note 14 (enhancement should apply where the firearm or ammunition "had the potential of facilitating another felony offense or another offense, respectively"). If the enhancement applies, the sentencing guideline level (before departures and acceptance of responsibility) is level 26.

4

1. Departures Under U.S.S.G. §§ 5K2.6, 2.9, and 2.14

The government believes that the defendant's conduct takes this case outside of the heartland of typical firearm offenses under U.S.S.G. §2K2.1 and that three departure principles are applicable to the defendant's conduct. See, e.g., Koon v. United States, 518 U.S. 81, 95 (1996). The government seeks a upward departure of a total of five levels, see Government's Sentencing Memorandum and Motion to Depart Upward From Guideline Range, ECF 38, at pp. 20-25, which results in a level 31 offense level prior to a reduction of three levels for acceptance of responsibility. If the requested upward departure is given, the defendant's guideline range would be 97-121 months (with Criminal History Category III).

The government is requesting an upward departure under U.S.S.G. § 5K.2.6 based on the dangerousness of the weapon at issue. Id. at 21-22 (citing cases). The government is also asking for an upward departure based on the defendant's true criminal purpose (to commit mass murder) under U.S.S.G. §2K2.9, and his threat to public safety under U.S.S.G. §5K2.14. Id. at 22-24.

**C.  Government's Requested Sentence of a Minimum of 120 Months Is Reasonable**

The government's requested sentence is appropriate under the circumstances of this case. The defendant obtained a fully automatic weapon, with ammunition, with the intent to use it to kill his perceived enemies; his desire to kill was motivated by a twisted and radical ideology that mixed his support of ISIS and his desire to perpetuate a race war against whites and the police.[7] In the context of this case, a sentence of 120 months is appropriate and consistent with similar cases.

---

[7] It is therefore not surprising that courts throughout the country, including the Supreme Court and courts in our District, have consistently approved of the use of bias statements related to the defendant's motive at sentencing. See, e.g., Wisconsin v. Mitchell, 508 U.S. 476 (1993) (use of bias crime statute for sentencing enhancement was permissible in case where defendant targeted a white man based on his race); Barclay v. Florida, 463 U.S. 939 (1983) (racial hatred of defendant

5

In United States v. Wehelie, 1:16-CR-162 (E.D. Va. July 14, 2017), the defendant in that case was an ISIS supporter who discussed with an FBI confidential source, his desire to target a military recruiting office.  The defendant in that case was a convicted felon who purchased four semi-automatic firearms and ammunition from an FBI confidential source and was immediately arrested.  There, like here, the defendant claimed he did not intend to carry out any crime of violence.  After pleading guilty to one count of violating 18 U.S.C. §922(g), Judge Bruce Lee departed upward and sentenced the defendant to the statutory maximum sentence of 120 months because the defendant was intending to use the weapons to facilitate an attack because of his ISIS ideology.  The government has identified similar cases in its Supplemental Memorandum in Aid of Sentencing, ECF 44 at 3-5.[8]  More recent cases have affirmed the appropriateness of this sentence, specifically United States v. Christopher Hasson,  19-CR-0096 (GJH) (D. Md., January 30, 2020), where a member of the U.S. Coast Guard, who stockpiled a number of firearms with the intent to use them against racial minorities, and was motivated by his white nationalist beliefs, was sentenced to 160 months incarceration, and another  Fourth Circuit case, United States v. Kobito, 994 F.3d 696 (4th Cir. 2021), where the defendant there sought to use the silencers in an attack against a federal building that was motivated by his hatred of the federal government

---

who wanted to start a race war was appropriate factor to consider); Kapadia v. Talley, 229 F.3d 641, (7th Cir. 2000)  (anti-Semitic slur used by defendant was appropriately considered by the Court because conduct related to defendant's violence against Jewish community center); United States v. Nori, 254 F.Supp.3d 109, 115 (D.D.C. 2017) (Contreras, J.)(quoting Wisconsin, 508 U.S. at 489 and other cases).

[8] The government also identified similar cases in other filings, where defendants were sentenced for mere possessory firearms offenses, and were sentenced for crimes that they intended to commit with the firearm.  See, e.g., United States v. Henry, 2012 WL5881845 at *4 (E.D. Pa. Nov. 21, 2012), aff'd 425 Fed. Appx. 116 (3rd Cir. 2011) (upward departure found where defendant sentenced for firearm violation but possessed intent to kill the prosecutor).

(applying U.S.S.G. §2K2.1 guideline and applying enhancements to raise guideline level by 16 levels).

### Conclusion

The government has previously discussed why the sentence is also appropriate under 18 U.S.C. §3553(a), and the government recommends the Court sentence the defendant to a minimum sentence of 120 months incarceration.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
DC Bar Number 415793

By:        /s/
Tejpal S. Chawla
D.C. Bar. No. 464-012
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7280 (Chawla)
Tejpal.Chawla@usdoj.gov