## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. 17-089 (RJL)** |
| | ) | |
| **CLARK CALLOWAY, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION
July **27**, 2021 [Dkt. # 39]

This is yet another example of a case where the United States ("the Government")

seeks to use uncharged conduct to dramatically increase a defendant's base offense level

and sentencing range (*i.e.*, offense level 19 for a range of 37–46 months) through the use

of an enhancement and upward departures under the United States Sentencing Guidelines

("the Guidelines") (*i.e.* offense level 28 for a range of 97–121 months). *See* Government's

Sentencing Memorandum and Motion to Depart Upward from Guideline Range ("Gov.

Mot.") [Dkt. ## 38, 39].  For the following reasons, I will GRANT in part and DENY in

part the Government's request.

### STATEMENT OF FACTS

Defendant Clark Calloway ("Calloway") has had a lengthy history of making highly

inflammatory statements on social media.[1]  *See* Presentence Investigation Report ("PSR")

---

[1] I adopt without change the factual findings of the Probation Office's Presentence
Investigation Report ("PSR") [Dkt. # 36] contained in paragraphs 6–20 and 23–29.
Calloway objected to paragraphs 6 through 20 of the report, arguing that it was

[Dkt. # 36] at ¶¶ 7–9.  For example, on public accounts, Calloway "pledged his support to" the terrorist group ISIS[2] and "'friended' several hundred . . . ISIS fighters and sympathizers[.]"  *Id.* ¶¶ 7–8.  He has also expressed support for violent action—support which ranged from sharing "pictures associated with jihad and terrorism" to more sinister statements, such as urging others to engage in mass violence against racial groups and police officers. *Id.* ¶¶ 7, 9.  Not surprisingly, as a result of these postings, the Government opened an investigation of Calloway in June 2016.  *Id.* ¶ 7.

During the Government's investigation, several Government informants contacted Calloway.  *See id.* ¶¶ 10–19, 23–28.  One of these Government informants—Confidential Source 2 or "CS2"—offered to sell Calloway an M-16 rifle.  *Id.* ¶ 12.  Calloway initially declined, noting that he was interested but did not have enough money to purchase the weapon.  *See id.*  Thereafter, a different informant—Confidential Source 3 or "CS3"—offered to sell Calloway an AK-47 on March 31, 2017.  *Id.* ¶¶ 14–15.  This time, Calloway took the informant up on the offer, agreeing to pay for the AK-47 in two installments.  *See id.*  Subsequently, Calloway even agreed to pay an extra $50 to receive a fully automatic

---

inappropriate to include facts other than those contained in the defendant's Statement in Support of His Guilty Plea.  *See* PSR at 29.  However, Calloway lodged no objections to the factual accuracy of these paragraphs, and they recount Calloway's online activity and conversations with confidential informants—facts which Calloway has expressly represented that he does not dispute.  *See* Defendant's Response to the Government's Submission [Dkt. # 53] at ¶ 3 (noting that the defendant does not dispute "the accuracy of Mr. Calloway's Facebook posts" or "statements attributed to Mr. Calloway when he was being secretly recorded by the confidential informants").

[2] "ISIS" refers to the Islamic State of Iraq and al Sham and is a foreign terrorist organization.  PSR ¶ 7.

AK-47.  *Id.* ¶ 16.  Calloway met up with CS3 two more times to make payments on the weapon and discuss the purchase.  *Id.* ¶¶ 17–18.  Calloway made his final payment on April 28, 2017.  *Id.* ¶ 18.

While Calloway was awaiting delivery of the AK-47, he continued to make menacing statements—online and in conversations with CS3.  For example, he told CS3 that he wanted to use the AK-47 on "crackers."  *Id.* ¶ 17.  On social media, his messages were equally alarming.  For example, on April 30, Calloway wrote "Ak-47! Remember this post."  Government's Third Supplemental Sentencing Memorandum ("Gov. Third Mem.") [Dkt. # 51] at ¶ 23.w.[3]  He warned to "[n]ever underestimate a Marine corps veteran" and stated that he was "ready to slaughter these cave dwellers."  *See id.* ¶¶ 23.t, 23.u; *see also id.* ¶ 23.aa ("Death to the European, fake, Jewish, imposters.").  On May 4, 2017, FBI agents delivered to Calloway a disabled fully automatic AK-47 and ammunition.  PSR ¶¶ 19, 28.  Calloway was arrested and confessed shortly thereafter.  *Id.* ¶¶ 19–20, 28.

Calloway continued his pattern of menacing statements following his arrest.  For example, he told Government agents that he needed the gun for a "race war" after initially stating that he wanted it for "protection."  *Id.* ¶ 20.  In prison, Calloway even told other prisoners that he was planning to kill the FBI agents responsible for his arrest and continued to express support for violent terrorist attacks.  *See* Transcript of Evidentiary Hearing ("Evidentiary Hearing Trans.") [Dkt. # 69] at 18:9–19, 16:14–20.[4]

---

[3] The defendant does not dispute the accuracy of these posts.  *See supra* note 1.

[4] I issued a bench ruling on June 16, 2021 finding credible the witness who offered testimony regarding statements made by Calloway while he was incarcerated.

## PROCEDURAL HISTORY

Calloway was indicted on May 9, 2017 and has been held in pretrial detention since his arrest.  On October 10, 2018, Calloway pled guilty, in front of my colleague Judge Emmet Sullivan, to all three charges in the indictment: (1) Interstate Transportation of a Firearm and Ammunition, 18 U.S.C. § 924(b), and Causing an Act to be Done, 18 U.S.C. § 2; (2) Unlawful Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g)(1) & (9); and (3) Illegal Possession of a Machine Gun, 18 U.S.C. §§ 922(o) & 924(a)(2).  *See* Indictment [Dkt. # 4]; *see also* Transcript of Change of Plea Proceedings Before the Honorable Emmet G. Sullivan ("Plea Trans.") [Dkt. # 35] at 9:1–5, 24:2–13.  Calloway did so without the benefit of a plea agreement.  *See* Plea Trans. at 3:15–19.

On January 10, 2019, the Government filed its sentencing memorandum and a motion for an upward departure.  *See* Gov. Mot.  The Government sought one enhancement and three upward departures that would cumulatively add nine points to Calloway's total offense level under the Guidelines.  *See id.*  Following this request, the parties have submitted a slew of briefs disputing the proper Guidelines calculation.  *See* Defendant's Sentencing Memorandum [Dkt. # 41] ("Def. First Memo"); Government's Supplemental Memorandum in Aid of Sentencing [Dkt. # 44]; Defendant's Supplemental Briefing on Enhancements and Upward Departures ("Def. Second Memo") [Dkt. # 45]; Government's Response to September 16, 2019 Order [Dkt. # 46]; Defendant's Position on September 16, 2019 Order ("Def. Third Memo") [Dkt. # 48]; Government's Response to Defendant's Position September 16, 2019 Order [Dkt. # 50]; Gov. Third Mem. [Dkt. # 51]; Defendant's Response to the Government's Submission [Dkt. # 53]; Government's Fourth

4

Supplemental Sentencing Memorandum [Dkt. # 57]; Government's Fifth Supplemental Sentencing Memorandum ("Gov. Fifth Memo") [Dkt. # 70]; Defendant's Supplemental Sentencing Memorandum [Dkt. # 71-2].

Due to a judicial recusal, however, this case was transferred on May 18, 2020 from Judge Sullivan to this Court prior to the sentencing taking place. On May 17, 2021, I held an evidentiary hearing to take testimony from one of the Government's witnesses about the defendant's threatening statements in front of his fellow inmates. On June 16, 2021, I held another hearing to give the parties an opportunity to present their arguments as to the enhancement and departures sought by the Government.

## ANALYSIS

The Government in this case seeks to significantly increase Calloway's Guidelines sentence pursuant to the following Guidelines provisions: (1) a four-point enhancement under section 2K2.1(b)(6)(B) for Calloway's intent to use a firearm in connection with another felony offense; (2) a two-point enhancement under section 5K2.9 for Calloway's intent to commit another offense; (3) a two-point enhancement under section 5K2.14 for Calloway's danger to public safety; and (4) a one-point enhancement under section 5K2.6 for Calloway's use of a dangerous weapon in the commission of his offense. All told, the Government's requests would nearly *triple* the Guidelines range from 37–46 months to 97–121 months.

Whenever the Government uses uncharged conduct to seek substantial sentencing enhancements after a defendant has pled guilty, there is a significant risk to fundamental fairness and, ultimately, to a defendant's constitutional rights. *See United States v. James*,

5

2019 WL 2516413, at *2–*3 (D.D.C. June 18, 2019) (Leon, J.).  Accordingly, this Court must carefully assess whether the Government has fully satisfied each enhancement and departure by a preponderance of the evidence.  *See United States v. Bell*, 795 F.3d 88, 103–04 (D.C. Cir. 2015).

### A.    Section 2K2.1(b)(6)(B) Enhancement – Intent for Use in Connection With Another Felony Offense

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provide for a four-point enhancement "[i]f the defendant . . . possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B).

Here, Calloway pled guilty to an indictment that specifically alleged that he had knowledge, intent, and reason to believe that the AK-47 would be used and possessed in connection with another felony offense.  In particular, the indictment alleges that Calloway had both "an intent to commit an offense [with the firearm] punishable by imprisonment for a term exceeding one year" and "knowledge and reasonable cause to believe that an offense punishable by a term of imprisonment exceeding one year was to be committed [with the firearm]." Indictment at 1–2.  Indeed, the indictment specifies that the offense punishable by a term of imprisonment exceeding one year is "Assault with a Dangerous Weapon, in violation of 22 D.C. Code, Section 402." *Id.* at 2.

The plea colloquy in this case before Judge Sullivan likewise confirms that Calloway admitted to having the very intent alleged in the indictment.  Calloway confirmed that he "receive[d] a copy of the indictment" and pled guilty to the "three counts" in the

indictment, including possession of a firearm with intent to commit a felony. Plea Trans. at 9:1–5, 13:7–9. When asked if he was "pleading guilty because you are guilty," Calloway answered "Yes." *Id.* at 10:20–22.

His guilty plea is of course strong evidence itself in support of the enhancement. Indeed, concessions in a defendant's guilty plea colloquy may alone establish a factual basis to support a sentencing enhancement. *See, e.g.*, *United States v. Flores*, 995 F.3d 214, 220, 223 (D.C. Cir. 2021) (upholding Guidelines calculation based on the defendant's admissions in his guilty plea); *accord Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (explaining that admissions in a guilty plea "carry a strong presumption of verity"); *United States v. Sidell*, 553 F. App'x 619, 624 (7th Cir. 2014) ("A defendant's admission in a plea agreement, during the plea colloquy, or even at sentencing can remove a fact from dispute since an admission is even better than a jury's finding beyond a reasonable doubt." (citations and quotations omitted)). As such, I find Calloway's admission here enough to sufficiently support the enhancement the Government seeks.

The Government's additional evidence—Calloway's menacing statements—further supports this admission. Particularly probative among these are Calloway's statements between March 31, 2017 and May 4, 2017—the time between his decision to purchase the AK-47 and his acquisition of the gun. For example, he posted on social media: "Ak in route! Machete on deck! I'm slaughtering anybody that ain't Muslim in these last days." Gov. Third Mem. ¶ 23.f. He warned "all military and combat veterans" to "[p]repare for death." *Id.* ¶ 23.i. He posted: "Soon the great killing will commence." *Id.* ¶ 23.m. On

May 3—the day before he received the gun—he posted: "These cops still killing us, so, by all means shoot back." *Id.* ¶ 23.ii.

Based on his plea colloquy admissions and his various internet postings, I find that Calloway had the intent to commit assault with a dangerous weapon using the unlawfully possessed AK-47. Indeed, Calloway himself made explicit the connection between the indictment and these threatening statements in his plea colloquy, acknowledging that he threatened to kill people with his soon-to-be-acquired AK-47 before admitting to having the intent to commit assault with a dangerous weapon.[5] *See* Plea Trans. at 6:15–9:5. As such, Calloway's intent to commit assault with a dangerous weapon using the AK-47 constitutes the required "knowledge, intent, or reason to believe that [the firearm] would be used or possessed in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), and I thus find the enhancement applicable

Calloway offers several counterarguments, but none are sufficient to overcome this evidence. Principal among these is his contention that he never took a "substantial step" toward committing assault with a dangerous weapon. *See* Def. Third Memo at 2. Not surprisingly, this argument echoes the PSR, which notes that Probation disagreed with the application of this enhancement because "the defendant did not take any substantial steps toward committing 'another felony offense[.]'"[6] PSR at 28. This argument, however,

---

[5] While Calloway disputed one of the several threatening statements the government raised during his plea, *see* Plea Trans. at 8:20–22, I do not find this dispute material in light of Calloway's other concessions.

[6] The PSR also contended that the "other offense" referenced in section 2K2.1(b)(6)(B) could not be a "potential offense," PSR at 28. But the text of the Guideline provides for an enhancement if a defendant "possessed or transferred any firearm or ammunition *with*

misses the mark.  Section 2K2.1(b)(6) does *not require* a "substantial step" by its plain

terms or in the accompanying application notes.  Rather, the enhancement applies if there

is "knowledge, intent, or reason to believe" that a firearm will "be used or possessed in

connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  Here, Calloway

clearly had the intent to use a firearm to commit another felony offense—a conclusion that

does not turn on the occurrence of a "substantial step."  Neither Calloway, nor the PSR,

cite a single case or otherwise advance an argument to support departing from the plain

text of the Guideline.[7]  *See United States v. Hart*, 324 F.3d 740, 745 (D.C. Cir. 2003)

(explaining enhancement should be applied in accordance with the plain language of the

Guideline).  Defendant's remaining arguments are even less persuasive.[8]

--------

*knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense*."  U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added).  This clause plainly encompasses offenses that have not yet taken place but that the defendant intended to commit.  *See United States v. Bowie*, 198 F.3d 905, 913 (D.C. Cir. 1999) (applying enhancement for "possession of the weapon" combined with an "intent to use it to facilitate his felony assault on [police] officers").

[7] The PSR likewise stresses the need for "a nexus between the firearm possessed by the defendant and the other offense."  PSR at 28.  Here, any nexus requirement is easily met because Calloway procured the unlawful firearm with the intent to use it for the other offense.  In other words, the unlawful transportation and possession of the firearm was "part of the same course of conduct or common scheme or plan" as the assault Calloway planned to carry out with that firearm.  *See* U.S.S.G. § 2K2.1 cmt. n.14(E); *accord Bowie*, 198 F.3d at 913 (intent to commit assault with unlawfully possessed firearm satisfied enhancement); *United States v. Hart*, 324 F.3d 740, 744–46 (D.C. Cir. 2003) (homicide committed with firearm months apart from arrest for unlawful possession was sufficiently "factually and temporally related" for purposes of the enhancement).

[8] Calloway additionally contends that applying the enhancement would violate the First Amendment.  In Calloway's view, considering as evidence his statements on social media and in conversations with confidential informants amounts to "proscribing speech or expressive conduct[.]"  *See* Def. First Memo at 6–9.  But Calloway's speech is merely being used as evidence of his intent, and the First Amendment "does not prohibit the

## B.    Upward Departures

In addition to the section 2K2.1(b)(6)(B) enhancement, the Government also seeks

three upward departures.   In assessing whether to depart upward, this Court must first

determine whether this case falls outside "the Guidelines' heartland" and is thus a "special,

or unusual, case[.]"    *Koon v. United States*, 518 U.S. 81, 95 (1996) (citations and

quotations omitted).   If so, "the court is authorized to depart if the applicable Guideline

does not already take [these special or unusual factors] into account."[9] *Id.* at 96.   However,

---

evidentiary use of speech to establish the elements of a crime or to prove motive or intent."
*United States v. Ring*, 706 F.3d 460, 471 (D.C. Cir. 2013) (citing *Wisconsin v. Mitchell*,
508 U.S. 476, 489 (1993)) (quotations omitted).

Finally, Calloway argues that the AK-47 could not have facilitated assault with a dangerous
weapon because it was disabled and only briefly in his possession. *See* Def. First Memo
at 4.  Please!  This argument is too clever by half.  The "facilitated, or had the potential of
facilitating" language in application note 4 was adopted in 2006 to clarify the phrase "in
connection with."  *See* U.S.S.G. Amend. 691 (explaining that "the amendment addresses a
circuit conflict pertaining to . . . the use of a firearm 'in connection with' burglary and drug
offenses.").  The inquiry is whether the defendant had knowledge, intent, or reason to
believe that the firearm would be used or possessed to facilitate or potentially facilitate
another felony offense.  As explained above, Calloway intended to use the firearm to
facilitate assault with a dangerous weapon and is thus eligible for this enhancement.  Even
to the extent there was a substantive difference between the Guideline and the application
note, the Guideline—which unambiguously incorporates a *mens rea*-based test and makes
no mention of the facilitation language—would control.  *See United States v. Winstead*,
890 F.3d 1082, 1090–92 (D.C. Cir. 2018).

[9] This standard specifically governs when departure factors are "encouraged." *Koon*, 518
U.S. at 95–96.  In this case, all three departures sought by the Government are enumerated
in the Guidelines and thus "encouraged" if the factor applies.   *See* U.S.S.G. §
5K2.0(a)(2)(A); *United States v. Rhodes*, 145 F.3d 1375, 1382 (D.C. Cir. 1998) (citing
*Koon*, 518 U.S. at 94–95) (departures encouraged where Guidelines "give fairly clear
departure instructions" and provide that courts "may" depart); *accord United States v.
Riley*, 376 F.3d 1160, 1169 (D.C. Cir. 2004) (finding that sections 5K2.9 and 5K2.6
"encourage[] upward departure" when they apply); *United States v. Cole*, 357 F.3d 780,
784 (8th Cir. 2004) (same for section 5K2.14).

even where "the basis for [a] departure is taken into consideration in determining the guideline range," a departure may still be warranted "in an exceptional case" that involves aggravating or mitigating factors far beyond those "ordinarily involved" in the offense contemplated by the Guidelines.  U.S.S.G. § 5K2.0(a)(3).

### 1.      Section 5K2.9 – Intent to Commit Another Offense

Section 5K2.9 authorizes the Court to "increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct" "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense[.]" U.S.S.G. § 5K2.9.  This departure "may be applied only in situations where the guidelines for a particular offense do not adequately take into consideration the facilitation or concealment of another offense." *United States v. Ogbeide*, 911 F.2d 793, 796 (D.C. Cir. 1990).  The Government seeks a two-level upward departure under section 5K2.9 on the theory that Calloway was "intent on committing mass murder based on a twisted ideology that sought to destroy our society" and thus the Guideline "does not sufficiently take into account the serious risk and danger posed by the defendant."  Gov. Mot. at 22–23.

This departure does not apply, however, in this case because the relevant Guideline—section 2K2.1—*already* takes into account Calloway's intent to commit another offense.  Specifically, the section 2K2.1(b)(6)(B) enhancement adds an additional four points to account for Calloway's intent to commit "another felony offense." *See supra*.  Under similar circumstances, our Circuit held that a departure under section 5K2.9 for the commission of fraud was inappropriate where the defendant was charged with

"intent to defraud" and thus "the sentence prescribed by the guidelines for that offense had necessarily taken into consideration the fact that the offense would facilitate the crime of fraud itself[.]" *Ogbeide*, 911 F.2d at 796. The same reasoning applies in this case. The sentence prescribed by the Guidelines has expressly taken into consideration Calloway's intent to commit another felony offense—the precise basis upon which the Government seeks to invoke section 5K2.9.

The Government's argument to the contrary does not pass muster. It contends that section 2K2.1(b)(6)(B) treats all felonies similarly—*i.e.*, grand larceny and attempted murder each get four points—and thus section 5K2.9 allows the Court to depart upward for intended offenses that carry "serious risk and danger[.]" Gov. Mot. at 22. But section 5K2.9 is specifically concerned with the defendant's intent to commit another offense, *not* the nature of that contemplated offense. Indeed, the glut of departures that *do* contemplate the nature of the intended offense prove the point. For example, a departure may be warranted if a defendant used a firearm to commit another felony offense and "death resulted," *See* U.S.S.G. § 5K2.1, or a defendant used a firearm to commit a felony that involved taking someone hostage, *see id.* § 5K2.4, or—most pertinent here—the felony offense would have caused significant danger to the public or involved a particularly dangerous weapon, *see id.* §§ 5K2.14, 5K2.6. In each of these cases, it is possible that the "[]other felony offense" contemplated by section 2K2.1(b)(6)(B) does not account for these factors related to risk and danger. *See, e.g., United States v. Thomas*, 723 F. App'x 60, 62 (2d Cir. 2018) (applying dangerous weapon departure because it targeted conduct "separate from the general conduct targeted by § 2K2.1(b)(6)(B)"). These departures stand in stark

12

contrast to section 5K2.9, which—in this case—contemplates a departure for the precise conduct already accounted for in section 2K2.1(b)(6)(B): intending to commit another felony offense.

Finally, I decline to depart upward under this provision using section 5K2.0(a)(3). Section 5K2.0(a)(3) authorizes departure "even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range[] if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense." U.S.S.G. § 5K2.0(a)(3). Calloway's *criminal intent* is not present "to a degree substantially in excess of" that normally present when the section 2K2.1(b)(6)(B) enhancement applies. Rather, by the Government's own telling, the Guideline "does not sufficiently take into account *the serious risk and danger* posed by the defendant." Gov. Mot. at 22 (emphasis added). These factors are thus more appropriately addressed by Guidelines that relate to risk and danger. *See infra.*

### 2.       Section 5K2.14 – Endangering the Public

Section 5K2.14 authorizes the Court to "depart upward to reflect the nature and circumstances of the offense" "[i]f national security, public health, or safety was significantly endangered[.]" U.S.S.G. § 5K2.14. The Government seeks a two-level upward departure under section 5K2.14 because "the defendant was trying to kill law enforcement officers," "the defendant's crime and intent was harm to society and intimidate [sic] specific communities," and because the defendant chose a particularly

13

dangerous weapon:   "a fully automatic AK-47 assault weapon with an extended ammunition clip."  Gov. Mot. at 23–25 (emphasis omitted).

I find that this two-level upward departure is appropriate in this case.  As I concluded above, Calloway intended to use a fully automatic AK-47 with a high-capacity magazine to commit assault with a dangerous weapon.  He also possessed a machete that he indicated could play a role in this attack.  *See* Gov. Third Mem. ¶ 23.f ("Ak in route! Machete on deck!").  The dangerous nature of the defendant at the time of the offense—being armed with multiple weapons that he intended to use in carrying out an attack—created a serious risk that multiple individuals could have been killed or injured.  I find that this situation presented a serious threat to public safety that takes this case outside of the Guidelines' heartland.  *See* U.S.S.G. § 2K2.1 cmt. n.11(D) (noting that "[a]n upward departure may be warranted" where "the offense posed a substantial risk of death or bodily injury to multiple individuals").

The Guidelines do not adequately account for this risk.  While the 2K2.1(b)(6) enhancement accounts for Calloway's intent to commit *a felony*, it does not consider the serious risk stemming from the particular felony Calloway intended to commit in this case.  *See United States v. Singer*, 825 F.3d 1151, 1158 (10th Cir. 2016) (applying departure where Guideline did not take into account factors that endangered the public).  Thus, I find that two additional points are warranted to reflect the serious danger to public safety posed by Calloway.

Calloway argues that this departure may apply only where the "conduct endangered public welfare *at the time of the act*[.]"  Def. Second Memo at 9 (emphasis in original).

True enough: the Guideline is written in the past tense—*i.e.*, "was significantly endangered"—suggesting that the Court should not consider the "future dangerousness of the defendant." *United States v. Moses*, 106 F.3d 1273, 1278 (6th Cir. 1997) (citations omitted). But I find that Calloway was dangerous at the time of the offense, when he was armed and had the intent to commit assault with a dangerous weapon.[10]

### 3. Section 5K2.6 – Dangerous Weapon

Section 5K2.6 authorizes the Court to "increase the sentence above the authorized guideline range" "[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense[.]" U.S.S.G. § 5K2.6. "The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." *Id.* The Government seeks a one-level departure under section 5K2.6 because "possessing a machine gun with a large capacity magazine (as well as a machete) with the intent to commit mass murder of law enforcement officers by ambush, demonstrates possession of the weapon carried with it a substantial risk of death[.]" Gov. Mot. at 21–22.

I decline to depart upward under this provision. To be sure, Calloway possessed a dangerous weapon—a fully-automatic AK-47—during the commission of the offense. However, the Guidelines already account for Calloway's possession of a machinegun. *See*

---

[10] Calloway also argues that he did not present a danger because he only momentarily possessed the weapon before law enforcement—which was on scene—arrested him. *See* Def. Second Memo at 10. But that contention gets the facts backwards. Calloway was arrested after only briefly possessing an unlawful weapon *because* he presented a danger to public safety.

U.S.S.G. § 2K2.1(a)(3)(A)(ii) (applying base offense level based on involvement of a "firearm that is described in 26 U.S.C. § 5845(a)"); 26 U.S.C. § 5845(a)(6) (including "a machinegun" in definition of "firearm"). Application of 5K2.6 is thus inappropriate for mere possession of the firearm, without more. *See United States v. Elliot*, 797 F. App'x 750, 754 (4th Cir. 2019) (declining to apply section 5K2.6 for defendant's use of Molotov cocktails where the statute of conviction and corresponding Guideline "comprehend[ed] the use of Molotov cocktails"). In addition, the Government has not proffered any evidence that Calloway "used" the weapon "in the commission of the offense" in a way that would bring his conduct outside the heartland of the Guidelines, because he didn't!

The Government's argument for applying this departure fails to overcome this deficiency. The only factor cited by the Government beyond possessing a proscribed firearm is Calloway's "intent to commit" heinous crimes in the future using dangerous weapons.[11] *See* Gov. Mot. at 21. But this conduct—(1) intent to commit an attack (2) that would endanger the public—is already accounted for by the section 2K2.1(b)(6) enhancement and the section 5K2.14 departure respectively. Moreover, the Government fails to explain how the intent to commit a *future* crime constitutes use or possession "*in the commission of the offense.*"[12] U.S.S.G. § 5K2.6 (emphasis added). I thus find this

---

[11] While the Government also mentions a "large capacity magazine" and "machete," Gov. Mot. at 21, I likewise do not find that mere possession of these items during the commission of the offense is so extraordinary as to justify a departure. Moreover, I find it sufficient that the dangerous nature of these items—along with the firearm—was accounted for in the 5K2.14 departure. *See supra*.

[12] Indeed, both cases cited by the Government in support of this departure cited factors at the time of the offense that were not fully accounted for in the Guidelines and brought the case beyond mere possession. *See United States v. Serrano*, 392 F. App'x 358, 359 (5th

departure inapplicable and aimed at conduct that has already been accounted for through other Guidelines provisions.

### C.    Final Guidelines Calculation

For all of the above reasons, I conclude that the total offense level in this case is 25. I start by adopting the PSR's uncontested conclusion that the base offense level is 19 after subtracting three points for acceptance of responsibility.  *See* PSR ¶¶ 35–44; *accord* U.S.S.G. §§ 2K2.1(a)(3); 3E1.1(a), (b).  As this opinion indicates, I then add an additional four points under the section 2K2.1(b)(6)(B) enhancement and an additional two points under the section 5K2.14 upward departure, bringing the total offense level to 25.  Thus, with a criminal history category of III, *see* PSR ¶ 54, the Guidelines range is 70–87 months imprisonment.  I will give the parties an opportunity at sentencing to present arguments on whether the 18 U.S.C. § 3553(a) factors support a variance in this case.

---

Cir. 2010) ("[T]he substantial distinction between mere possession of any weapon and the possession of numerous semi-automatic weapons, some of them loaded with large amounts of ammunition in close proximity to small children, took this case out of the heartland[.]"); *United States v. Hardy*, 99 F.3d 1242, 1249 (1st Cir. 1996) ("The use and/or indiscriminate disposal of multiple weapons which took place in this case surely elevated their dangerousness well above the level associated with the simple possession of a single firearm.").

## CONCLUSION

For the foregoing reasons, the Government's Motion for Upward Departure [Dkt. # 39] is **GRANTED** as to the section 2K2.1(b)(6)(B) enhancement and the section 5K2.14 upward departure and **DENIED** as to the section 5K2.9 and section 5K2.6 upward departures.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge